The Chief Justice delivered the following opinion; and decree of the court:
The appellant holds the elder legal title, upon which he relies; the entry under which he claims being younger than the one under which the appellee derives title. The appellee claims the land in controversy by virtue of an entry made on the 16th day of March, in the year 1781, in the name of Osburn Sprigg, in the following words :
“ Osburn Sprigg enters 2000 acres, See. on the east side of Brashear’s creek, to begin at two beech trees marked I. S. about twenty poles belovy Asturgus’s hunting camp, and about two miles below Harrod’s old' trace, and to run up the same side of the creek till nearly opposite to the mouth of a branch running in on the tvest side of the creek, to a poplar and beech marked, I. S.; then oft at right angles to the general course of-the creek, as far as the line runs up the creek, eastwárd-lv, to include the quantity, with three lines beside the line on the creek.”
This entry was surveyed and patented in the name of Sprigg, who conveyed seven hundred acres thereof, on the west end of the survey, to Huff, who was complainant in the circuit court. It will, therefore, be necessary only to examine $prigg’s entry and survey.
Harrod’s trace crossing Brashear’s creek, is exhibited, on the plat; and both the trace and creek are proved to have been sufficiently notorious, at, and before the date of the entry. ' Asturgus’s hunting camp is shewn upon the plat, within about 20 poles of the beginning called for, and very hear the bank of the creek.
The depositions show that this hunting camp had been made by Asturgus, the winter preceding the date oí the entry ; that he was there again, with others, encamped, about the first of Marchl781 ; and that prior to the date of the entry, the two beech trees claimed as the beginning, were marked, standing on the bank of the creek. The poplar and beech marked I. S. called for *381 as thfe upper comer, are shewn «ear tbe bank of the creek afeo, arid nearly opposite to the mouth of a branch running in on the west side. The poplar arid beech trees are proven to have been marked prior to the date of the entry; and no other branch is shewn running in on the west side of the creek, which could have led astray an inquirer.
But the hunting camp and beech trees claimed as the beginning, are found about a mile and a half only, on a direct line, below where the trace crosses the creek ; and hence it has been argued, that the beginning could not be found, with reasonable search, unless Asturgus’s hunting camp has possessed notoriety, which is not proven.
This argument does not seem to us to be well founded: because, it is believed, no subsequent locator, with this entry in his hand, would ever have thought of pursuing a direct line in search of the trees; but would naturally have searched along the bank of the creek, with its meanders, in quest of the trees. Which were described as standing on the bank, and the hunter’s camp, which was near the bank. Indeed, he cotdd not have proceeded with a direct line, so as to strike a point two miles below the trace, without first meandering down the stream to ascertain its bearings. That any one in quest of those trees, and the hunting camp, should adopt this singular and whimsical mode of finding them, cannot be supposed. But if he had, as the hunting camp, although not an object of notoriety, was one which must have been éasily seen; he would have found the hunting camp, and consequently the marked trees at the beginning, ‘while he was experimenting for the true course, without the trouble of returning back to the trace, to pursue a direct line to a point two miles on the creek, after ascertaining what bearing would SO strike the creek.
But if, by any singular good fortune, he could have ascertained the point two miles below the trace, on a straight line, without first ascertaining what course thq creek run, or in other words, its meanders ; still, it is believed, he could1 not have been at much trouble in find-ingthe beginning.
The two beech trees stand on the bank of the creek, ánd the hunting camp within twenty poles of them, near the bank. If, thén, he had to search half a mile, or *382 even three-fourths of a mile, above and below, along* the bank of the creek, it is believed he must have been ⅞ poor explorer of land indeed, not to have discovered the hunting camp ; which, if once found, would have ena-. bled him easily to have found the marked trees. It may be proper to remark, here, that the distance is not given as the beginning itself, but as a description to enable others to find the special objects of location. Mathematical truth or certainty, was not necessary ; it was sufficient, if others could find the objects by reasonable search ; which, we are of opinion, might certainly have been done. Having found the beginning, there could have been little difficulty in finding the upper trees called for. Their contiguity to the mouth of the branch, described, furnished a sufficient clue.
We are of opinion, with the circuit court,-that the en-, try is sufficiently certain, as to the beginning and base line ; and, that it ought to be sustained.
The only remaining question, is, as to its construction. It seems to us, that the circuit court have not understood the true import of the expressions, “as far as the line runs up the creek,” and the expression, “ east?, wardly,” in the entry. These first were used by the locator, to prevent misconstruction. Having given a base line, and declared he would run off at right angles, ta the general course of the creek, in order to, exclude the idea that he meant the general course of the whole creek, he adds this explanation, “ as far as the line runs up the, creek which was. the same as saying, he would run, off at right angles, to so, much of the creek as was embraced by hjs., base line,. The expression, “. eastward-, ly,” is used, to shew to, which, side of his base line he meant to run off; and, the words, according to the true meaning of the entry, should be transposed, so as that the entry (after the base line given), should read thus, “ then off eastwardly, at right angles to the general course of the creek, as far as the line, (meaning the base line), runs up the creek, so as to include the quantity in three lines besides the line on the creek.” “ The line on the creek,” is to be the base line. This view renders the entry clear and Intelligible.
We are, therefore, of opinion, that Osburn Sprigg’s survey, should have bgen made- by beginning at the two,, beech trees marked I., S. running thence up the c,reekk *383 with its meanders, to the poplar and beech marked I. S. and, that the side lines of the survey, should extend front this base, off eastwardly, at right angles to the general course of so much of the creek as will be embraced by the base line, so far as that a line, parallel to the general course of so much of the creek, will include the quantity. And it appearing that the circuit court have decreed against the appellant, more land than will be taken from him, by this mode of surveying the appellee’s claim, the said decree is held erroneous, aud must be reversed.
Wherefore, it is decreed and ordered, that the decree aforesaid be reversed and set aside ; and that the appellant recover of the appellee, his costs herein expended ; and it is further ordered, that this cause be remanded to the circuit court, which court is directed to cause a survey to be made, so as to enable that court to pronounce a final decree between the parties, agreeably to the foregoing opinion and decree of this court.
And it is further ordered, that the circuit court, at the time of pronouncing the-final decree between the parties, shall direct that the defendant therein, shall pay all the costs in that court, up until the filing'of the defendant’s answer ; and that the parties shall pay an equal proportion of the costs accruing in that court subsequent to that time. Which is ordered, &c.
Judge Bibb agreed with the court as to the general principles of the decree, but differed as to the division of the costs, thinking Huff entitled to the whole costs, because Roberts had not disclaimed or released his legal title to the land now decreed to Huff, but had put the whole claim in issue, and had only made propositions of compromise, which Huff might, without an imputation of fraud, have rejected : and that such propositions in court, or out of court, ought not to be judicially noticed, so as to affect the principal, or incidental rights of the parties.